IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BALTIMORE DREDGES, LLC *
Plaintiff,
v. * Civil No. L-05-3232

TREASURE COAST CONTRACTING *
SERVICES, LLC, et al.,
Defendants *

****************************** *

TREASURE COAST CONTRACTING *
SERVICES, LLC, et al.,
Plaintiff, *
v. Civil No. L-05-3425
*
BALTIMORE DREDGES, LLC
Defendants

MEMORANDUM

Now pending is Baltimore Dredges' Motion to Dismiss Defendants' Counterclaim. Because the issues have been fully briefed, a hearing is unnecessary. See Local Rule 105.6 (D. Md. 2004). For the reasons stated herein, the Court will, in a separate order, DENY the motion and DIRECT the parties to file a joint status report.

## I. BACKGROUND

On June 6, 2005, Baltimore Dredges, LLC ("Baltimore Dredges," or simply "Baltimore") leased a dredge to Treasure Coast Contracting Services, LLC ("Treasure Coast").[1] William Jewett, an alleged principal of Treasure Coast, guaranteed the lease payments. On June 8, 2005, Baltimore delivered the dredge to Alabama, where Treasure Coast intended to extract underwater sand and gravel.

---

1 The dredge is variously referred to as a MudCat 370 HP dredge and a Ellicott 370 Dragon dredge.

On October 4, 2005, Treasure Coast and Jewett, claiming that the dredge did not work, filed an action against Baltimore Dredges in the state courts of Alabama. Baltimore removed the case to federal court, which, on venue grounds, transferred the case to the District of Maryland. The case was docketed as L-05-3425.

On October 5, 2005, Baltimore Dredges filed suit against Treasure Coast and Jewett in Maryland state court. Defendants removed the case to federal court, where it was docketed as L-05-3232. The Court later consolidated the cases.

On December 7, 2005, Treasure Coast and Jewett counterclaimed against Baltimore as follows:

- Counts I – II (Fraudulent Inducement and Negligent Misrepresentation). Defendants seek damages and a declaratory judgment that the lease is void.

- Counts III – V (Breach of Contract and of Express and Implied Warranties). Defendants seek damages on the ground that the dredge was defective.

On August 2, 2006, Baltimore moved to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). On August 21, Defendants responded. Baltimore Dredges did not file a reply.

## II. ANALYSIS

### A. **Standard**:

In deciding a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). A complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts which would entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46

(1957); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995). A Rule 12(b)(6) motion only tests the legal sufficiency of the complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.1999). It is not a device for resolving factual disputes or deciding the ultimate merits of the case. See id. "The question is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1357 at 336 (2d ed.1987).

**B. Counterclaim**:

In its Motion to Dismiss, Baltimore points to a number of lease provisions that limit Baltimore's warranties and either restrict or waive Treasure Coast's remedies. Baltimore also argues that Jewett, who was not a party to the lease, cannot sue for breach.

In Maryland, contracts are subject to rescission upon a showing of fraud or negligent misrepresentation in the inducement. See Maryland Environ'l Trust v. Gaynor, 370 Md. 89, 97, 803 A.2d 512, 517 (2002) (recognizing that fraud or conduct with a "tendency to deceive" may justify rescission) (citation omitted). Counts I and II allege that Baltimore induced Treasure Coast and Jewett to lease the dredge by falsely representing that it was almost new, in excellent shape, with only two months of use, and with only 600 hours of operating time on the engine. Defendants contend that these representations were material and false, and that Baltimore Dredges proclaimed them either knowingly (Count I) or negligently (Count II).

Whether Treasure Coast and Jewett can back up these claims remains to be seen. The proper place to test the strength of their factual assertions is at the summary judgment stage, however.

In the remaining counts (III, IV, and V), Treasure Coast and Jewett allege that Baltimore Dredges either breached the contract or breached its warranties. Paragraph 7 of the Lease provides that the dredge "will be free of defects and material and workmanship for 4 months following the Delivery Date, including wearing parts." Treasure Coast and Jewett contend that the dredge broke within the first hours of operation, and that Treasure properly notified Baltimore, which, despite numerous attempts, never repaired it. Whether these contentions pan out and successfully avoid the lease's limitation of liability clauses remains to be seen. As with the other counts, the proper place to test Counts III-V is through a motion under Fed. R. Civ. P. 56.

Finally, Baltimore Dredges contends that Jewett, who signed the Lease only as a guarantor, lacks standing to counterclaim. This position is clearly wrong with respect to the fraud and negligent misrepresentation counts. Jewett has standing to argue that the contract is void for fraud; if he is successful, then his own obligations will dissolve. Cf. McGinley v. Massey, 71 Md. App. 352, 358, 525 A.2d 1076, 1079 (1987) (holding guaranty unenforceable where underlying stock redemption agreement was void). Baltimore's position with respect to counts III-V is on sounder footing. As a guarantor, Jewett lacks standing to recover damages. He does have standing, however, to contest the amount that he owes under the lease. He can argue, for example, that the breaches offset, in whole or in part, the monthly lease payments that he guaranteed. This subject, like the others, is properly reserved for summary judgment. Accordingly, Baltimore Dredge's motion is denied.

**C. Status Conference**:

Following the parties' unsuccessful attempt at settlement, on July 28, 2006, the Court held an in-court scheduling conference. On July 31, the Court ordered the parties to provide joint status reports in October and January. (See Docket No. 27) The parties have filed neither. Accordingly, on Monday, February 26, the parties will, by electronic filing, report (i) what discovery they have accomplished, (ii) what discovery remains to be conducted before the May 1, 2007 discovery deadline, (iii) whether the parties will file dispositive motions.

## III. CONCLUSION

For the foregoing reasons, the Order will, by separate Order, DENY Defendants' motion, and DIRECT the parties to file a joint status report on February 26, 2007.

Dated this 15th day of February 2007.

/s/

Benson Everett Legg
Chief Judge